UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:12-CR-104-CLC-WBC |
| vs. ) | |
| ) | |
| FAITH BLAKE ) | |

REPORT AND RECOMMENDATION

I. Introduction

This matter came before the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B) to conduct such evidentiary hearings as deemed necessary and to issue a report and recommendation on defendant's motion for an evaluation as to his mental competency to stand trial (Doc. 464).

A hearing was held on said motion before the undersigned Magistrate Judge on June 25, 2015, in which the following participated:

1. AUSA's Michael Porter and Gregg Sullivan for the United States.
2. The defendant, FAITH BLAKE.
3. Attorney John Brooks for defendant.

Motion for Psychiatric and Medical Examination

On December 12, 2014, a motion was filed in this case by defendant moving the Court for an evaluation to determine if defendant has psychological, psychiatric and/or mental disorders or disease (Doc. 464). The Court conducted a hearing on said motion and entered an Order of Commitment for Mental Evaluation on December 30, 2014 (Doc. 499) to determine: (1) whether the defendant was suffering from a mental disease or defect rendering her mentally incompetent to the extent she is unable to understand the nature and consequences of the

1

proceedings against her or to assist properly in her defense and (2) whether the defendant suffered from a mental disease or defect which rendered her insane or mentally incompetent or which significantly reduced or diminished her mental capacity at the time of the offense with which she is charged or at the time of her entry of a guilty plea. The issues addressed at the hearing were whether she was competent to understand the proceedings and assist in her defense and whether she was competent at the time of the entry of her guilty plea.

A forensic evaluation was performed by Rodolfo A. Buigas, Ph.D., Forensic Exam Coordinator.

### Testimony at the June 26, 2015, Hearing

Rodolfo A. Buigas, Ph.D., Forensic Exam Coordinator at the Federal Bureau of Prisons, Federal Detention Center in Miami, Florida was present via video conference. He has a Ph.D. in Psychology and is a licensed psychologist in the State of Florida. He is a forensic psychologist and has 20 years of experience. He has testified in federal court as an expert over 100 times. He identified his forensic report which was received as an exhibit in the June 26, 2015 hearing. AUSA Porter asked him to walk through the report page by page. I will not repeat in detail all of the testimony present but will discuss significant portions of it. Dr. Buigas first interviews various correctional services staff to ask how well defendant adjusted to the unit in which she was housed. The following tests were administered:

    Clinical Interviews
    Mental Status Examination
    Inventory of Legal Knowledge (ILK)
    Booklet Category Test-Second Edition (BCT)
    Wechsler Abbreviated Scale of Intelligence-Second Edition (WASI-II)
    Rogers Criminal Responsibility Assessment Scale (R-CRAS)
    Minnesota Multiphasic Personality Inventory-Second Edition (MMPI-2) and
        Restructured Format (MMPI-2-RF)

2

Case 1:12-cr-00104-CLC-CHS   Document 635   Filed 07/09/15   Page 2 of 6   PageID #: 7484

The defendant underwent psychological testing and clinical interviews by various psychology staff including Drs. Buigas and Feldman, Mr. James Pitman, M.S., and Ms. Alexandra Crouch, M.S., graduate psychology students under the supervision of Dr. Buigas. Forensic Report, Tr. 605, at p. 3.

Defendant underwent psychological testing and clinical interviews by various psychology staff including Dr. Buigas. After addressing the background of defendant, psychiatric history, substance abuse history, and clinical history (Report, pp. 1 and 2), Dr. Buigas gave his evaluation findings. He assessed that Defendant had no difficulty functioning in the structured environment of the institution, no difficulties in communication, interaction, self-care, feeding, or other activities of daily living. She displayed good eye contact, was cooperative, and her facial and other nonverbal expressions were consistent and appropriate. She was oriented to her current and legal circumstances. She exhibited coherent, organized, and logical thought processes. She did not report significant depression, anxiety, delusions, obsessions, suicidal or homicidal ideations, or perceptual disturbances. Her intelligence was estimated to be in the average range (Report, p. 4).

Psychological test results showed defendant to be within average range of overall intellectual, verbal and nonverbal functioning. The Booklet Category Test (BCT) indicated a score which was not suggestive of neurocognitive impairments (Report, p. 5).

Dr. Buigas' Diagnostic Impressions were as follows:
(Diagnostic and Statistical Manual of Mental Disorders-Fifth Edition/DSM-5)

> Somatic Symptom Disorder, Persistent, Severe, 300.82
> Opioid Use Disorder, In sustained remission, In a controlled environment, 305.50
> Other Specified Personality Disorder (mixed histrionic, dependent, and antisocial
>      features), 301.89

3

Ms. Blake is a 40 year old, Caucasian female with a substance abuse history, and a minimal criminal and psychiatric history. The defendant meets criteria for multiple classifications under the current system of diagnostic psychiatric disorders (DSM-5).

The defendant meets the criteria for a diagnosis of Somatic Symptom Disorder. This diagnosis may be assigned when it has been determined that an individual has multiple, current somatic symptoms that are distressing or result in significant disruption of daily life. However, it should be noted that on an objective measure (MMPI-2-FR) of psychiatric functioning which includes somatic symptoms, Ms. Blake was exaggeratiing somatic, but not other forms of psychiatric symptomatology. Regardless, she appears to be experiencing some level of distress from such symptoms that are disproportionate and causing an elevated level of anxiety about her health.

The essential feature of Malingering, according to the DSM-5, is the intentional misrepresentation or exaggeration of physical or psychological symptoms, for gains such as receiving diminished legal ramifications. Malingering should be considered when any of the following combinations occur: lack of cooperation during the evaluation, there is evidence for the presence of Antisocial Personality Disorder, the presentation occurs in a medicolegal context, or there is marked discrepancy between subjective and objective findings. While the results of the MMPI-2-RF were suggestive of exaggerated somatic responding, no other types of symptoms were exaggerated and no additional tests resulted in such responding; therefore, malingering was considered, but not assigned as the defendant's symptoms are better explained by other conditions.

The defendant reported a history of substance dependence. She reported use of various opiods which only abated for significant periods during incarcerations. This pattern does not necessarily constitute true abstinence. Therefore, the defendant appears to meet the criteria for Opioid Use Disorder in a Controlled Environment.

Ms. Blake exhibited many tendencies which appeared to be of a pervasive, characterological nature. Her idiosyncratic style of thinking, interpersonal difficulties, emotional expressiveness, self-dramatization, dependency, and asocial behaviors suggest the presence of a personality disorder. While not one specific personality disorder incorporates all of the symptoms of this individual, the current psychiatric nosological system allows for the labeling of a generic personality disorder with a series of descriptive specifiers. In other words, for this individual, the diagnosis of Other Specified Personality Disorder with Histrionic, Dependent, and Antisocial Features may best describe her symptoms in the characterological domain.

Report, pp. 7,8.

    Dr. Bugias' Opinion on the Issue of Competency was:

The evaluation of competency to stand trial includes an assessment of the defendant's factual and rational understanding of the nature and consequences of the legal process as well as her ability to assist with her defense.

The defendant appears to have a good understanding of the legal process. The defendant was able to accurately define the roles of various courtroom personnel and legal processes. She indicated knowledge of the adversarial system and discussed her attorney's ability to defend her against the prosecution. The defendant acurately listed the charges against her as well as the possible penalties that she could face. It should be noted that the defendant is on her second attorney, as she detailed significant discontent with her former defense attorney. According to the defendant, the first attorney was paid a large fee by the Court, yet repeatedly did not act on her requests. She expressed greater confidence in her second attorney. The defendant indicated that she has a plea bargain in consideration in which she agreed to 4 of 91 counts, plus one count of failure to appear. The defendant added that she has a sentencing range of 0 to 20 years for each count. The defendant also relayed a reasonable means of communicating with her attorney.

The defendant was administered a measure of response style for her legal knowledge related to competency to stand trial (i.e., ILK), but this is not a direct measure of competency to stand trial. The total score on his measure is interpreted within the context of two strategies for detection of feigned deficits in legal knowledge. The first strategy involves the comparison of chance levels of responding within the dichotomous format of the test, while the second strategy compares the examinee's score with that of a relevant reference groups (e.g., adult competency examinee sample). The defendant's total score was suggestive of the candid portrayal of knowledge related to competency to stand trial.

Essential to the issue of competency to stand trial is whether or not a mental disease or defect is present and interfering with the defendant's ability to understand the charges against her, her ability to properly assist in her own defense, and the ability to understand the nature and consequences of the proceedings against her. The defendant demonstrates awareness of legal issues and her factual understanding is adequate. In addition, she appears to have an intact rational comprehension and appreciation of her legal situation. She appears to have no impairment that would prohibit an understanding of the legal process and ability to assist in her own defense. hence, the defendant's degree of trial competency is satisfactory and it is recommended that Ms. Blake be found Competent to Stand Trial.

Report, pp. 7,8.

      Dr. Buigas pointed out some confusion in the Order which requested an assessment of Defendant's competence as the date of the entry of Defendant's guilty plea. However, he opined that on that date, based on his evaluation and his review of the transcript of the guilty plea hearing of December 19, 2014, she was competent. He saw no problem. Defendant seemed to be knowing and rational at the time she plead guilty.

      Finally, Dr. Buigas testified Defendant would benefit from drug treatment and that of the

programs of which he was aware, he recommended the longer 500 hour program.

Counsel for Defendant cross-examined Dr. Buigas but presented no other evidence to contradict the findings contained in the forensic evaluation report. Based upon the evidence presented, I conclude Defendant is competent to assist in her defense and was competent at the time of the entry of her guilty plea which I conclude was a knowing and voluntary plea.

## Conclusion

Having carefully reviewed the Forensic Report and considered the testimony of Rodolfo A. Buigas, Ph. D., it is RECOMMENDED[1] the Court find Defendant Faith Blake competent to understand the nature and consequences of the proceedings against her and able to assist in her defense and that she was competent at the time of the entry of her guilty plea.

ENTER:

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

1 Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Courts order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).

Case 1:12-cr-00104-CLC-CHS   Document 635   Filed 07/09/15   Page 6 of 6   PageID #: 7488